IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| M.N., et. al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-04173- NKL |
| ) | |
| Rolla Public School District 31, et. al., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court are: Motions to Dismiss filed by Defendants Rolla 31 School District ("District") [Doc. # 42] and Missouri Department of Elementary and Secondary Education ("DESE") [Doc. # 44]; Motion for Judgment on the Pleadings/Administrative Record filed by the District [Doc. # 25]; Motion for Summary Judgment against the District filed by Plaintiffs M.N. and J.N. [Doc. # 28]; and cross-motions for Summary Judgment filed by DESE [Doc. # 27] and Plaintiffs [Doc. # 30]. The Court hereby grants the District's Motion for Judgment on the Pleadings and DESE's Motion to Dismiss and denies Plaintiffs' summary judgment motions, as well as the District's Motion to Dismiss.

**I.     Background**

1

During the 2010-2011 school year Plaintiff J.N., a minor, transferred into the District. While enrolled at the District, J.N. was provided special education services under an Individualized Education Program ("IEP") because he had a disability as defined under the Individuals with Disabilities Education Act ("IDEA"). The purpose of the IDEA is to protect the rights and education of children with disabilities. 20 U.S.C. § 1400(d). In furtherance of that purpose, the IDEA usually prohibits removal of disabled children from their educational setting for punishment unless the behavior was not a manifestation of their disability, which is determined by conducting a manifestation determination. 34 C.F.R. § 300.500. If a child is disciplined by removal from an educational setting, then a manifestation determination is required. *Id.* Here, M.N. brings suit against the District for allegedly violating the IDEA by failing to conduct a manifestation determination and against DESE for allegedly violating the IDEA through its policies concerning the jurisdiction of hearing officers and management of conflicts of interest for officers presiding over due process hearings.

J.N.'s IEP from August 31, 2010, mentions that J.N. is easily frustrated and has "melt downs." On September 15 and September 27, 2010, J.N. was suspended for violent rages. Following these suspensions, M.N., J.N.'s mother, withdrew him from the District and home schooled him for approximately two months because the District threatened to assign J.N. to the District's Alternative Program. Around December 2, 2010, J.N. returned to school. The IEP team met and subsequently decided it was best for J.N. if he only attended school for half of the day. On February 16, 2011, J.N. was again suspended

for violent behavior. M.N. withdrew consent for special education for her son on April 11, 2011, and then requested that her son undergo an initial disability evaluation five minutes later. After April 11, 2011, J.N. returned to the regular classroom full time. However, on April 19, 2011, J.N. again assaulted another student and was suspended. The District informed M.N. that upon J.N.'s return on April 27, 2011, he would be re-assigned to the District's Alternative Program.

Following this April 19 suspension, M.N. filed for a due process hearing with DESE on April 22, 2011, to request the school perform a manifestation determination because J.N.'s academic placement had been changed because of disciplinary reasons. On April 22, 2011, Plaintiffs M.N. and J.N. requested that Hearing Officer Ellis recuse himself from the hearing because of the "relationship" between him and Plaintiffs' counsel, Deborah Johnson. Mr. Ellis had never represented Rolla School District, M.N., or J.N. Hearing Officer Ellis refused to withdraw as the Hearing Officer for Plaintiffs' due process hearing.

On May 16, 2011, the due process hearing was held on the complaint filed by M.N. against the District. On May 26, 2011, Hearing Officer Ellis rendered a decision in favor of the District holding that there had been no change of placement and, therefore, no manifestation determination hearing was required. On December 16, 2011, J.N. withdrew from the District. M.N. and J.N. moved to Republic, Missouri, and J.N. enrolled in the Republic School District in January 2012.

M.N. and J.N. have alleged one count of violation of the IDEA against the District

for disciplining J.N. by removing J.N. from his educational setting without determining if J.N.'s behavior was caused by his disability. They seek a judgment ordering the District to perform a manifestation determination.

M.N. and J.N. also seek orders forcing DESE to change some of their policies related to the IDEA. Specifically, they want the hearing officers to have "authority/jurisdiction" to hear all matters raised in future complaints filed by the plaintiff and they want a revision of the District's conflict of interest policy for hearing officers.

## II. Rolla Public School District 31

### A. Motion to Dismiss

The District seeks dismissal of the complaint on the grounds that the case is moot because J.N. has moved out of the District and thus a manifestation determination by the District provides no meaningful relief. M.N. and J.N. argue that their claim is not moot because they will still benefit from the District conducting a manifestation determination even though J.N. is no longer enrolled in the District. The Plaintiffs claim that if the school is forced to determine whether J.N.'s behavioral problems were caused by his disability, Plaintiffs will then have the right to (1) contest any erroneous decision concerning the cause of J.N.'s behavioral problems; (2) recover for compensatory educational services provided by the parents in the past as a result of the District's improper removal of J.N.; and (3) have the discipline "removed" from or explained on J.N.'s records so that stigma and potential criminal liability are reduced. [Doc. # 47 at 5-6]. Drawing all inferences in favor of the Plaintiffs, the Court finds that there appears to

4

be some relief which may still be available to J.N. if a manifestation determination is ordered, even if the District would no longer be able to provide any prospective relief to J.N.

### B. Judgment on the Pleadings

The Court now turns to the District's Motion for Judgment on the Pleadings and M.N. and J.N.'s Motion for Summary Judgment against the District. IDEA allows parties to seek review of an administrative hearing officer's decision by bringing a civil action in federal district court. *Blackmon ex rel. Blackmon v. Springfield R-XII School Dist.,* 198 F.3d 648, 654 -655 (8th Cir. 1999). *See* 20 U.S.C. § 1415(i)(2)(A). In lawsuits filed under section 1415(i)(2) of the IDEA, the "district court is required to receive the records of the administrative proceedings, hear additional evidence at the request of a party, and independently determine the appropriate relief based on a preponderance of the evidence, while still giving due weight to the factual findings" of the administrative hearing officer. *Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S.*, 641 F.3d 996, 1002 (8th Cir. 2011). *See* 20 U.S.C. § 1415(i)(2)(c).

Because the court determines relief based on preponderance of the evidence, a court may make a judgment on the administrative record even if there are disputes about material facts. *Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 561 (8th Cir. 1996). However, one of the reasons the district court must still give 'due weight' to the administrative hearing officer is because the administrative officer had an opportunity to observe the demeanor of the witnesses. *CJN v. Minneapolis Public Schools,* 323 F.3d

5

630, 636 (8th Cir. 2003). These standards apply even if the hearing was conducted by a single officer instead of a panel. *Pachl v. Seagren*, 453 F.3d 1064 (8th Cir. 2006).

### 1. *Administrative Deference*

In this case the District has filed a Motion for Judgment on the Pleadings/Administrative Record and the Plaintiffs have filed a Motion for Summary Judgment. As a threshold matter, the Court must evaluate M.N.'s argument that the Court should accord the administrative record less deference because the hearing officer at J.N.'s due process hearing was biased, conflicted, and had no educational expertise. M.N.'s attorney, Deborah Johnson, also alleges bias based on past encounters she has had with Mr. Ellis in her professional capacity.

Administrative officers are presumed to be unbiased. *Perkins v. Astrue,* 648 F.3d 892, 902 (8th Cir. 2011). Contrary to M.N.'s assertions, "[a] claimant bears the burden of producing sufficient evidence to overcome this presumption." *Id.* Further, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias on the part of the administrative officer. *Id.* at 903. (Internal citations omitted). Instead, M.N. must show that Mr. Ellis, "in the context of the whole case" made statements that were "so extreme as to display clear inability to render fair judgment." *Id.* (internal citations omitted). Further, a lack of bias can be shown if the parties are permitted to develop a "full and fair record" for a later court's review. *Yamaha Motor Corp., U.S.A. v. Riney*, 21 F.3d 793, 798 (8th Cir. 1994). Finally, under 20 U.S.C. § 1415(f)(3)(A), there is no requirement that the hearing officer have any education expertise.

6

Deborah Johnson alleges Mr. Ellis's past conduct demonstrates he is biased against her and parents of disabled children. Ms. Johnson alleges that while she and Mr. Ellis were opposing attorneys, he commented that he would like to "zing" her for only stating half the facts, improperly refused to accept deposition subpoenas, and refused to provide documents in discovery. However, even if true, these actions are merely tools of advocacy for past clients and are insufficient as a matter of law to show that Mr. Ellis was biased in the completely different capacity of hearing officer.

M.N. also claims Mr. Ellis exhibited actual bias as a hearing officer because he made arguments for the District at the due process hearing, he scheduled the due process hearing at the District offices, he refused to allow Ms. Johnson to record conference calls, and he is a member of the Missouri Council of School Attorneys.

However, the Court finds these allegations insufficient to show a bias that affected Mr. Ellis's decision. First, a review of the record shows that Mr. Ellis was not arguing for the District, but merely raising his concerns so that Ms. Johnson would have the opportunity to address these concerns before he made a decision. As to the location of the hearing, there is no allegation that Mr. Ellis chose the District's offices instead of an equally free and local forum for the hearing; therefore, no inferences of bias can be made. Finally, a disagreement about the recording of a telephone conference is not evidence of bias; nor does membership in a professional organization show an inability to be objective.

7

Further undercutting M.N.'s argument is Mr. Ellis's recorded behavior during the administrative hearing. Mr. Ellis allowed the Plaintiffs to amend their complaint and allowed additional documents into the record because it may be "helpful if the matter is reviewed by someone else." [TR at p. 21]. Mr. Ellis also allowed exhibits to be admitted over the District's objections on multiple occasions. [See TR at p. 22 for one such occurrence]. On this record, the Court does not find that Mr. Ellis was biased and will apply the normal deference to the administrative record.[1]

## 2. *Manifestation Determination*

IDEA protects disabled children from being removed from the classroom because of their disability. 34 C.F.R. § 300.530(e); 34 C.F.R. § 300.536(a). If a child suffers (1) a change of placement for (2) a disciplinary reason, then the school must conduct a manifestation determination to determine if the behavior resulted from the child's disability. *Id.*

The first issue in deciding whether a manifestation determination is required is determining whether the disabled child has suffered a change of placement. A change of placement has two sub-requirements: (1) whether the removal is for greater than ten consecutive school days or qualifies as a "pattern" of removals, and (2) whether the removal constitutes a foundational change in the student's education program.

---

[1] M.N. also argues that the procedure for appointing hearing officers is invalid because the hearing officers have contracts through DESE and that makes them employees of the state, even though hearing officers cannot be officers of the state. However, this is more appropriately argued against DESE. There is nothing the District can do to change the procedure for appointing hearing officers.

8

The first prerequisite to a change of placement is that the child's placement is changed for more than ten consecutive days or a series of removals that form a pattern:

> (i) Because the series of removals total more than 10 school days in a school year;(ii) Because the child's behavior is substantially similar to the child's behavior in previous incidents that resulted in the series of removals; and (iii) Because of such additional factors as the length of each removal, the total amount of time the child has been removed, and the proximity of the removals to one another.

34 C.F.R. § 300.536.

After the prerequisite time duration has been met, it is then necessary to determine whether the removal constitutes a removal from the current educational program. *Id.* It is clear that a suspension is a change of placement. *Honig v. Doe*, 484 U.S. 305, 328 (1988). While the Eighth Circuit does not define a change of educational placement aside from suspensions,[2] other circuits have held that a change of an educational placement will only occur when a fundamental change in the educational program occurs.[3]

Determination of whether such a change has occurred requires a fact specific look at whether the altered education program similarly meets the child's educational needs and goals. *See John M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. 202*, 502 F.3d

---

[2] *See Doe ex rel. Doe v. Todd Co. Sch. Dist.*, 625 F.3d 459, 464 (8th Cir. 2010) *cert. denied,* 132 S. Ct. 367 (U.S. 2011) (commenting in dicta that "a change of placement, often to a more structured educational setting, may be triggered by the child's violation of the school's code of conduct, but is primarily an educational, not a disciplinary, decision.").

[3] *See Erickson v. Albuquerque Pub. Sch.*, 199 F.3d 1116, 1122 (10th Cir. 1999)*; Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984); *Sherri A.D. v. Kirby*, 975 F.2d 193, 206 (5th Cir.1992); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009); *Tilton by Richards v. Jefferson County Bd. of Educ.*, 705 F.2d 800, 804 (6th Cir. 1983).

708, 714 (7th Cir. 2007); *Johnson ex rel. Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002).

After establishing the removal was a change of educational placement, the second criteria for requiring a manifestation determination is whether the change of placement was for a disciplinary reason. IDEA clearly states that a manifestation determination must take place if there is a decision to "change the placement of a child with a disability *because of a violation of a code of student conduct*." 34 C.F.R. § 300.530(e) (emphasis added).

M.N. alleges that the District changed J.N.'s placement for disciplinary reasons four different times during the school year and that each of these changes required the District to conduct a manifestation determination. M.N. argues that disciplinary changes in placement occurred when (1) M.N. decided to home school J.N. for approximately two months; (2) J.N.'s IEP was changed so he attended only half a day of school from December until April; (3) the district decided to move him into the Alternative Program; and (4) J.N. was suspended for more than ten aggregate days during the school year and these suspensions reflected a pattern.

### i. *Home School*

M.N. argues that her decision to home school J.N. was a disciplinary change of placement requiring a manifestation determination because the decision was in response to an alleged threat by the District to move J.N. from the classroom. However, the Court

10

agrees that this argument is without merit for the simple reason that home schooling J.N. was not the District's decision.

It is clear under the IDEA that the decision to change the child's placement must be made by the school district in order to trigger the requirement of a manifestation determination. 34 C.F.R. § 300.530. Parents' unilateral decisions about a child's removal do not trigger a manifestation determination under the IDEA. *See id.* Here, M.N. was not "forced" to withdraw her child; she had other procedural avenues available to dispute the District's threatened change of placement.

### ii. IEP

M.N. alleges that an IEP team's decision that J.N. would benefit from a shortened day of school is a disciplinary change of placement. In order to succeed on this claim M.N. must show both that (1) there was a change of placement, and (2) it was for a disciplinary reason. Because M.N. fails to show that a shortened day of school was a form of discipline, these actions by the IEP team do not constitute a disciplinary change of placement.

The IEP team's reduction in J.N.'s time on campus from 8:15am to 12:15AM is an educational change of placement because the removals in sum are greater than ten days and greatly change the quantity of education that J.N. receives. However, the IEP change was not a disciplinary change of placement, but rather a decision made for educational purposes. First, the changed IEP tracked the same educational goals that were in place before J.N.'s suspensions. J.N.'s initial IEP, dated August 31, 2010, indicated that J.N.

11

was only going to participate in regular education twenty-five percent of the time and would be in a regular class less then forty percent of the day. [Doc. # 19, IEP 8/31/10]. Moreover, M.N.'s consent and contribution to the IEP indicate that the IEP was not changed for disciplinary purposes. The basis for the move to a half-day listed "parent input" first, followed by teacher input and records review. [Doc. # 19, IEP 12/2/10]. M.N. also signed the IEP and waived the ten day delay so that the IEP change could occur immediately. Finally, the two months between the half day IEP decision and any activity for which J.N. could be punished also support a finding that the IEP change was not because J.N. "violated a school code of conduct." 34 C.F.R. § 300.530(e).

### iii. *Alternative Program*

M.N. also argues that the District's decision to place J.N. in an Alternative Program was a disciplinary change of placement under IDEA because the Alternative Program is only for children who have been previously disciplined and suspended, the program is isolated in its own trailer on the District's campus, and the Alternative Program employs a different discipline system. The Court disagrees. While the District's decision to move J.N. to the Alternative Program was a disciplinary action, it nonetheless does not require that a manifestation determination be conducted because the transfer does not represent a change of placement.

It is clear that the District's decision to move J.N. to the Alternative Program was a disciplinary action. The District itself describes the program as a disciplinary program on its website and made the decision only after J.N. had broken rules of school conduct in

12

Case 2:11-cv-04173-NKL   Document 52   Filed 06/06/12   Page 12 of 19

the classroom.  *Alternative 2011-2012*, Rolla Middle School, http://rolla.k12.mo.us/ schools/rolla_middle_school/staff_pages/alternative/ (last accessed March 15, 2011) (stating the Alternative Program allows students the "opportunity to continue their education while still being disciplined.").

However, whether J.N. was disciplined is not the end of the inquiry.  Disabled children may be disciplined without violating the IDEA or triggering a manifestation determination.  *Honig*, 484 U.S. at 325 (noting IDEA provisions do not prevent schools from disciplining students by "the use of study carrels, timeouts, detention, or the restriction of privileges").  Therefore, the critical issue here is not whether the move was a disciplinary action but whether J.N.'s assignment to the Alternative Program constitutes a removal from his "current educational placement."  34 C.F.R. § 300.536.  Many circuits have offered a broad definition of educational placement.  Transfers from a program in one school to a program in a different school have not been found by many courts to represent a change in educational placement.  *Concerned Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v. New York City Bd. of Ed.*, 629 F.2d 751, 754 (2d Cir. 1980) (holding that transferring a child to another school in the same district with the same basic educational programs was not a change in educational placement); *see also Weil v. Bd. of Elementary & Secondary Educ.*, 931 F.2d 1069, 1072 (5th Cir. 1991).

Whether a transfer constitutes a change in educational placement requires a fact specific look into whether a child's educational goals and needs are being similarly met in the new placement.  *John M,* 502 F.3d at 714.  Analyzing changes in a child's IEP is one

13

specific fact which can be used to determine if an educational placement has changed. *Johnson,* 287 F.3d at 1180.

J.N. did not suffer a change of educational placement under this broad and fact specific definition. M.N. does not appear to allege that J.N. is receiving an inferior academic education in the Alternative Program. This is supported by the District's un-refuted claim that the Alternative Program has a low student to staff ratio and is a regular classroom setting with certified teachers. Therefore, it appears that the Alternative Program meets the same educational goals and needs as the regular classroom, and is not an educational change of placement.

M.N. argues that the program's disciplinary aspect and location in a trailer make this a change of placement. M.N. also argues the program's seclusion from the rest of the student body goes against IDEA's goal of mainstreaming disabled children. However, educational placement is primarily concerned with the child's educational goals and needs, not the physical location of the program within the school district. Therefore, the fact that the program is in a trailer on the District's campus is not relevant. Further, M.N. merely concludes that the disciplinary point system is detrimental to J.N. However, there are no facts to support this allegation or to show that J.N. would not benefit from a more structured environment. Finally, while it is true that the IDEA supports a preference for not segregating disabled children, the record does not establish that such segregation has occurred, as the Alternative Program has among its ranks both disabled and non-disabled children.

14

In conclusion, the Court finds that J.N.'s educational goals and needs are being met in a similar way in the Alternative Program as they were before the transfer. Therefore, the Court finds that Hearing Officer Ellis's conclusion that the Alternative Program is not a disciplinary change of placement under IDEA.

### iv. Ten Days of Suspension

M.N. argues that J.N. suffered a change in placement because he was suspended for more than ten days during the 2010-2011 school year, and these suspensions involve a pattern of behavior that triggers a change of placement under 34 C.F.R. section 300.536. The Court is required to independently review the record but give the Administrative Hearing Officer due weight. *Fort Osage*, 641 F.3d at 1002.

As previously explained, a disabled child suffers a change of placement under IDEA if the child has been subjected to a series of suspensions that constitute a pattern:

> (i) Because the series of removals total more than 10 school days in a school year;(ii) Because the child's behavior is substantially similar to the child's behavior in previous incidents that resulted in the series of removals; and (iii) Because of such additional factors as the length of each removal, the total amount of time the child has been removed, and the proximity of the removals to one another.

34 C.F.R. § 300.536. The comments in the Federal Register to 34 C.F.R. section 300.536(a)(2)(ii) state that whether a child's behavior is "substantially similar" is a subjective determination to be made on a case by case basis after considering any information regarding the child's behaviors in the child's IEP. Further, the Eighth Circuit has noted that "[s]uspensions exceeding ten days can create a change in placement, but do

15

not necessarily do so." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 464 (8th Cir. 2008), *quoting Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1495 (9th Cir.1994).

Hearing Officer Ellis found that J.N. was suspended on September 15, September 27, February 16, April 19, and suffered some bus suspensions. Hearing Officer Ellis found that these suspensions lasted 2.0, 2.8, 4.0, 5.4, and 0.4 days respectively. [Doc. # 19, Findings of Fact 16 and Conclusions of Law at p. 19]. Further, Mr. Ellis found that the first two suspensions and bus suspension were within 8 school days of each other, and they only represented a total of 5.2 days. The remaining suspensions occurred 82 and 121 school days after the initial suspension.

Hearing Officer Ellis properly determined that the April 19 suspension was ineligible to be considered when determining whether a pattern existed under 34 C.F.R. § 300.536. J.N. had been placed in the regular classroom on April 11, 2011, when his mother withdrew her consent for J.N. to be treated as a disabled child. This regular school placement was not appropriate for "successfully controlling dangerous misbehavior" and the completion of a new IEP was pending. This situation is analogous to *M.M. ex rel. L.R.*, 512 F.3d at 464, where the court refused to treat a series of short term suspensions as a change of placement because they occurred while the student was placed in the regular classroom under IDEA's stay-put provision, and that environment was inappropriate for controlling the child's behavior.

Because the April 19 detention is not properly included, th Court finds that

aggregate time out of the classroom for disciplinary is only 9.2 days.  Therefore, the suspensions fail to meet the first prong of the IDEA pattern test and there is no change of placement.

However, even if the Court does not exclude the April 19 suspension, the removals do not constitute a pattern as required by the third element of 34 C.F.R. § 300.536.  This is because the suspensions were short in duration, infrequent, and in the aggregate were barely greater than the ten day minimum.  Further, looking at August through March, J.N. was suspended infrequently, only five times.  Moreover, there was a long gap of time between the September and April suspensions.  Given the above factors, the Court agrees with Hearing Officer Ellis that the suspensions do not constitute a pattern under 34 C.F.R. section 300.536, and there is no disciplinary change of placement.

## III. DESE

In their Motion for Summary Judgment against DESE, M.N. and J.N. request that the Court order DESE, in its due process hearings, "to provide any hearing officer or Chairperson the authority to hear all issues raised in a request for a special education administrative hearing ("Due Process Complaint") that is assigned to the hearing officer or Chairperson and to hear all issues that were raised in Plaintiffs' request."  [Doc. # 30 at 1].  M.N. and J.N. also request that the Court order DESE to "modify their policies and procedures to reduce the potential for hearing chairpersons or hearing officers to serve during a time they have a conflict of interest."  [Doc. # 30 at 1].

Like the District, DESE filed a Motion to Dismiss because J.N. has moved out of

the District. DESE argued that because the claim against the District was now moot due to J.N.'s move, any declaratory judgment claim against DESE concerning its due process hearings would be futile or premature. The Court rejected the District's mootness argument when denying its Motion to Dismiss. However, the Court has now ruled on the merits that the District is not required to conduct a manifestation determination for J.N. M.N. and J.N. had argued that if the manifestation determination did not result in a favorable outcome for J.N., they would appeal the decision and then go through another due process hearing. However, given the outcome of their claim against the District, it now does not appear that a due process hearing will be held, rendering any declaratory judgment action against DESE unripe at this time. *See Pub. Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005) (A declaratory judgment action can be sustained if no injury has yet occurred, but the plaintiff must face an injury that is "certainly impending.").

Nor do Plaintiffs have a persuasive argument that the declaratory judgment is needed because of any other due process hearings they may seek in the future. M.N. and J.N. have provided no evidence that they have filed any new requests for a due process hearing. The occurrence of a due process hearing is contingent upon several factors, including misbehavior by the child, refusal of the school district to address the issue to the parent's satisfaction, and a parental decision to file a request for a hearing. As a result, any misconduct in a future due process hearing is too contingent to constitute an impending future injury which could be remedied by the Court. Therefore, M.N. and

18

J.N.'s claims against DESE are dismissed because there is no current injury to remedy with the declaratory judgment claims and no impending future injury.

### III. Conclusion

For the foregoing reasons, the Court hereby GRANTS the District's Motion for Judgment on the Pleadings [Doc. # 25] and DESE's Motion to Dismiss [Doc. # 44]. Plaintiffs' Motion for Summary Judgment against the District [Doc. # 28] is DENIED. The cross-motions for Summary Judgment filed by DESE [Doc. # 27] and Plaintiffs [Doc. # 30] are DENIED as moot. The District's Motion to Dismiss [Doc. # 42] is also DENIED.

    s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 6, 2012
Jefferson City, Missouri